IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANNE H. DILLER                              Case No. 6:14-cv-01414-MA

               Plaintiff,                 OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

               Defendant.

KATHRYN TASSINARI
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

DREW L. JOHNSON
1700 Valley River Dr.
Eugene, OR 97405

    Attorneys for Plaintiff

JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

MARTHA A. BODEN
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Anne H. Diller seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on March 18, 2010, alleging disability as of March 1, 2006 due to including but not limited to: asthma; arthritis in back; knee problems; memory loss; depression; anxiety; high blood pressure; plantar fascitis; and shoulder impingement. Tr. 201.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on December 12, 2012, at which plaintiff appeared with her attorney and testified. A vocational expert, Mark A. McGowan also appeared at the hearing and testified. On January 7, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1963, plaintiff was 49 years old on the date of the ALJ's unfavorable decision. Plaintiff has a General Education Degree (GED) and has past relevant work as a waitress.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since March 18, 2010, her application date. At step two, the ALJ found that plaintiff had the following severe impairments: asthma; mild degenerative disc disease of the lumbar spine; status/post arthroscopy bilateral knees; obesity; major depressive disorder; marijuana abuse; and amphetamine dependence in remission. At step three, the ALJ found that plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to light work as defined in 20 C.F.R. § 416.967 but with the following limitations. Plaintiff can lift twenty pounds occasionally and ten pounds frequently and can stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. Plaintiff cannot perform repetitive pushing or pulling. Plaintiff can occasionally stoop, crawl, and climb ladders, ropes, and scaffolds. Plaintiff should avoid concentrated exposure to respiratory irritants and hazards, such as dangerous machinery and unprotected heights. Plaintiff can occasionally reach overhead with her right upper extremity and has a mild impairment in her ability to tolerate usual work changes.

At step four, the ALJ found that plaintiff is unable to perform her past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as photocopy machine operator, office helper, and ticket seller. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from March 18, 2010 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate

4 - OPINION AND ORDER

plaintiff's credibility; (2) the ALJ failed to properly evaluate the medical opinions of treating physician Robert Burton, M.D.; (3) the ALJ failed to evaluate the opinion of nurse practioner, Marcia Clark-Harmon; (4) the ALJ erred in evaluating the RFC; and (5) the ALJ failed to properly evaluate the lay testimony.

## I.   ALJ Did not Err in Evaluating Plaintiff's Credibility

### A.   Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.12629, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*,

763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039.
Factors the ALJ may consider when making such credibility
determinations include the objective medical evidence, the
claimant's treatment history, the claimant's daily activities,
inconsistencies in testimony, effectiveness or adverse side effects
of any pain medication, and relevant character evidence. *Ghanim*,
763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

### B.    Analysis

At the hearing, plaintiff testified that she has no hobbies or
activities and spends her day watching television while laying on
her bed. Transcript of Record ("Tr.") (ECF No. 9 & 10), p. 48.
Plaintiff testified that she cares for her nine year old son and
cooks meals for him. Tr. 49. Plaintiff also testified that she
experiences pain mostly in her back, knees, and hips. Tr. 56.
Plaintiff further testified that she lays down with her knees
propped up to relieve pain in her back. Tr. 57. Plaintiff testified
that she can hear her hips popping when she bends over them. Tr.
60.

In an undated Adult Function Report, plaintiff noted that she
cooks, cleans, completes laundry, and takes care of her son. Tr.
221. Plaintiff specifically noted that she performs limited
household chores, such as dishwashing, vacuuming and laundry in
between resting for periods at a time. Tr. 223, 229-230. Plaintiff
indicated that she has no problems with personal grooming and

prepares her own meals daily. Tr. 223. Plaintiff also noted that she shops for groceries once a week for 30-60 minutes. Tr. 224. Plaintiff further noted that she can lift ten pounds but is unable to squat, bend or kneel. Tr. 226. Plaintiff stated that she can pay attention for several hours and follows written and spoken instructions very well. *Id.*

In a Pain & Fatigue Questionnaire, plaintiff noted that she experiences aching and stabbing pain daily. Tr. 233. Plaintiff indicated that her pain is made worse with any movement or staying on her feet for a long time. *Id.* Plaintiff also noted that she requires frequent naps during the day and is active for 30-120 minutes before needing to rest. *Id.*

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

Contrary to plaintiff's assertion, the ALJ provided three clear and convincing reasons, citing specific record evidence, which undermine his subjective complaints. As discussed below, the ALJ also provided one unconvincing reason for discrediting plaintiff's allegations of pain. However, the other three reasons adequately support the ALJ's credibility determination.

## 1. inconsistent with objective medical evidence

The ALJ specifically found plaintiff's subjective allegations of debilitating pain inconsistent with the medical record. Tr. 23. When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Morgan v. Commissioner Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Carmickle*, 533 F.3d at 1161. The ALJ's findings are supported by substantial evidence in the record.

In the decision, the ALJ cited to plaintiff's laboratory imaging as inconsistent with the severity of plaintiff's pain allegations. Tr. 19-20. For example, an August 2008 MRI of plaintiff's right shoulder revealed mild infraspinatus tendinopathy, early acromioclavicular degenerative joint disease but no tears. Tr. 19, 626. Orthopaedic treating physician Donald Pennington, D.O. noted that because the rotator cuff was in good shape, he was hesitant to recommend surgical intervention. Tr. 377. Plaintiff's October 2006 and January 2009 chest x-rays were negative. Tr. 606, 630. A June 2007 x-ray of plaintiff's wrist was normal. Tr. 618. Plaintiff's May 2009 bilateral hip x-ray was also negative. Tr. 761. As the ALJ noted, plaintiff's May 2009 lumbar x-ray revealed mild degenerative changes throughout her spine. Tr. 20, 763. Plaintiff's November 2011 spirometry test was normal. Tr. 1049.

Moreover, the ALJ noted that the majority of the medical evidence indicated relatively normal examination findings, including examinations from treating nurse practitioner Marcia Clark-Harmon. *See generally* Tr. 375, 377, 479, 494, 498, 505, 535, 554, 664, 779. For example, as the ALJ noted, in May 2009, neurologist Karen Dellinger M.D., documented a normal gait, negative romberg test, and an unremarkable motor examination. Tr. 20, 676. The ALJ also noted that while plaintiff experienced some limitation in the use of her right shoulder, a November 2008 physical therapy note indicated that plaintiff's right shoulder range of motion had significantly improved. Tr. 20, 472. In a September 2008 treatment note, Ms. Clark-Harmon noted an absence of joint swelling, erythema, and muscular atrophy; she also documented intact muscle strength and normal neurological findings. Tr. 494.

As the ALJ noted, examining physician, Todd J. Lewis documented essentially normal findings in a June 2010 examination. For example, Dr. Lewis noted tenderness without swelling or redness in plaintiff's right shoulder and full range of motion. Tr. 936, 937. Dr. Lewis also noted full range of motion and intact strength in the elbows, wrists, and hands. Tr. 937. He also observed a normal gait with good balance, some tenderness in the lumbar spine but no evidence of tender points or fibromyalgia. Tr. 936, 937. Dr. Lewis documented some limited range of motion in the lumbar spine but also noted the presence of a Waddell sign, superficial

tenderness. Tr. 938. Moreover, Dr. Lewis noted intact strength, sensation, and range of motion in plaintiff's hips, knees, and ankles. Tr. 939.

Furthermore, although plaintiff experienced temporary limitations prior to left knee surgery, her knee function improved with surgery. Tr. 19. As the ALJ cited, a May 2007 MRI of plaintiff's left knee revealed a medial meniscal tear. Tr. 19, 393. After left knee arthroscopy surgery in May 2007, Dr. Pennington noted in June 2007 that plaintiff's knee was healing "extremely well" before she fell and was diagnosed with a grade two ligament strain. Tr. 390, 384. However, in November 2007, Dr. Pennington opined that her medial ligament strain was improving but recommended additional physical therapy. Tr. 381. In a November 2007 treatment note, Ms. Clark-Harmon noted that plaintiff reported her knee and wrist pain as resolving and observed that plaintiff was not wearing her wrist or knee brace during this visit. Tr. 534. Ms. Clark-Harmon observed a steady gait. Tr. 535. In fact, a physical therapy treatment note indicated that plaintiff injured her right shoulder trying to move a 400 pound couch in December 2007. Tr. 465.

In short, the ALJ reasonably concluded that the objective medical evidence in the record is inconsistent with the degree of plaintiff's subjective symptoms and appropriately discounted her credibility on this basis.

## 2. symptoms controlled by medications

Next, the ALJ found that plaintiff's medications for pain and other symptoms have been relatively effective in controlling and treating these symptoms as a basis to discredit her testimony. "Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for SSI benefits." *Warre v. Commissioner of Soc. Sec. Admin*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

The medical record supports the ALJ's finding that plaintiff's symptoms are adequately controlled with medication. For example, as the ALJ noted, Ms. Clark-Harmon strongly suggested that plaintiff stop smoking cigarettes and start using her inhalers when plaintiff experienced an asthma exacerbation. Tr. 20, 475. Indeed, plaintiff reported that she felt much better with the use of her albuterol inhaler and no longer experienced shortness of breath. Tr. 479. In fact, Ms. Clark-Harmon has noted that plaintiff's continued smoking is the likely cause of her wheezing and exacerbation of her asthma. Tr. 991. In August 2008, plaintiff reported not needing to use Advair, a medication prescribed to her at the time for treatment of asthma. Tr. 498. Ms. Clark-Harmon also noted that plaintiff's diabetes is controlled on medication. Tr. 855, 870, 999.

Contrary to plaintiff's assertion, plaintiff's treatment notes indicate that she is stable on psychiatric medications. For example, as the ALJ noted, Ms. Clark-Harmon has noted at several visits that plaintiff is "stable on Cymbalta." Tr. 20, 509, 855, 869. In a January 2012 treatment note, plaintiff expressed difficulty dealing with the death of her mother, but with respect to medication, plaintiff stated that "as far as meds, I'm fine where I'm at." Tr. 949. A June 2012 consultative examination noted that plaintiff's symptoms appear moderately well controlled by her current medications. Tr. 1178. Treatment notes from March and September 2012 noted that plaintiff specifically requested no changes be made to her psychiatric medications. Tr. 1185, 1194. At a March 2012 psychotherapy visit, plaintiff stated that the medications are helping and are at the appropriate dose. Tr. 1194.

Although plaintiff stated in her Function Report that the prescribed medications and treatment do not relieve her pain, the medical records suggest otherwise. For example, in September 2008, Ms. Clark-Harmon prescribed Percocet, and plaintiff indicated that the pain medication relieved her pain and allowed her to care for her son. Tr. 485. In March 2012, plaintiff noted 80 percent improvement in pain in her left elbow from pain injections. Tr. 1166. In April 2009, plaintiff reported improved right shoulder range of motion and a reduction in pain due to physical therapy

exercises. Tr. 893. Thus, I conclude that the ALJ appropriately discredited plaintiff on this basis.

### 3. activities of daily living (ADLs)

The ALJ also discounts plaintiff's credibility by finding that plaintiff's ADLs are inconsistent with her subjective limitations. For example, the ALJ noted that plaintiff is able to care for her young son and completed community service work in a kitchen. Tr. 23. The ALJ also noted that plaintiff requested a medical letter in support of her request for public transportation to transport her to a jobs program. *Id.*

As plaintiff correctly contends, the ALJ mischaracterized evidence of plaintiff's ability to perform activities such as community service. Although plaintiff performed community service, she reported an increase in back and shoulder pain. Tr. 503. Although plaintiff requested a letter for transportation to a jobs program, there is no evidence in the record to suggest that plaintiff actually participated in a vocational program for an extended period of time. Moreover, as plaintiff noted, the ALJ did not clarify this issue at the hearing. In terms of her reported ADLs, plaintiff noted in her Function Report that she performed a few household chores such as dishwashing and laundry but rested in between chores. Tr. 223. She completes tasks slowly and takes frequent naps. *Id.* Therefore, I conclude that the ALJ's reasoning on this point is not supported by substantial evidence.

### 4. poor work history

The ALJ cited to plaintiff's poor work history to suggest plaintiff lacks a propensity to work. Tr. 23. Evidence of a poor work history which suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that she is unable to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). As the ALJ correctly noted, plaintiff had no earnings from 2003 until March 2006, her alleged onset date of disability. Tr. 23, 192. The ALJ also noted accurately that plaintiff's work history prior to 2003 reflects sporadic work. Tr. 23, 26, 42. Plaintiff argues that this is an improper reason to discount her testimony as plaintiff has a history of substance abuse that "likely interfered with her functioning" as well as having given birth to a child in 2003. Pl. Br. (ECF No. 14), p. 17. Plaintiff's theories are entirely unsubstantiated. After careful review of the record, I find no testimony from plaintiff or evidence in the record indicating that her lack of work was due to the birth of a child or substance abuse issues.[1]

In conclusion, although the ALJ's credibility reasoning does contain one error, this error does not invalidate the ALJ's overall adverse credibility finding. The ALJ's remaining reasons, when taken together, constitute clear and convincing reasons, supported

---

[1] I am also unconvinced by plaintiff's argument that her history of substance abuse adequately excuses her poor work history.

by substantial evidence to discount plaintiff's testimony. Therefore, I conclude that the ALJ's error is harmless. "So long as there remains substantial evidence supporting the ALJ's conclusions on...credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such [error] is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162; *Stout v. Commissioner Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## II.   **The ALJ Did Not Err in Evaluating Medical Opinions**

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of treating physician Robert Burton, M.D. Plaintiff also argues that Dr. Burton's opinions are well-supported by objective medical evidence in the record.

Dr. Burton provided two opinions dated April 9, 2012. First, Dr. Burton provided a Department of Human Services Medical/Mental Health Work Release form. In this form, Dr. Burton opined that plaintiff is unable to participate in a job search, an unpaid work experience, and vocational rehabilitation program. Tr. 1148. Dr. Burton opined that plaintiff was a good candidate for SSI. *Id.* Dr. Burton further opined that plaintiff's prognosis is poor for achieving employment status in her lifetime and assessed that she needs to stay in bed. *Id.*

Second, in an Oregon Department of Human Services Physical Residual Capacity form, Dr. Burton opined that plaintiff is able to sit, stand, walk for less than or equal to two hours in an eight-hour workday and can only lift or carry up to five pounds. Tr.

16 - OPINION AND ORDER

1149. Dr. Burton also assessed limitations in pushing and pulling in the upper and lower extremities, and an inability to kneel. *Id.*

Because Dr. Burton's opinions were contradicted,[2] the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at 1216. In the decision, with respect to the work release form, the ALJ gave no weight to the opinion because it was conclusory, lacked any explanation, and provided no qualifications for Dr. Burton. Tr. 22. With respect to the Physical RFC form, the ALJ gave this opinion no weight as well because the opinion was inconsistent with other objective medical evidence and failed to provide any rationale for assessing such extreme functional limitations. *Id.* Having carefully reviewed the record, I conclude that the ALJ's reasoning is supported by substantial evidence.

First, the ALJ discredited Dr. Burton's opinion in the work release form because he failed to provide any rationale for his extreme opinion that plaintiff requires complete bed rest. Tr. 22. The ALJ also discredited that opinion because it was conclusory. Tr. 1148. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Tonapetyan,* 242 F.3d at 1149;

---

[2] In a June 17, 2009 physical RFC assessment, Martin Kehrli, a nonexamining physician opined that plaintiff can can lift and carry ten pounds frequently and 10 pounds occasionally, and sit, walk, and stand for six hours each in an eight-hour workday. Tr. 678-685.

*see* 20 C.F.R. § 416.927(c)(3) ("the better an explanation a source provides for an opinion, the more weight we will give that opinion"). Here, with respect to the work release form, Dr. Burton gave no explanation as to why plaintiff requires complete bed rest. Tr. 1148.

Moreover, Dr. Burton did not cite to any clinical findings to support his opinion in the work release form. A careful review of the medical record indicates that Dr. Burton examined plaintiff once, April 9, 2012, the date of both opinions. Tr. 1156. Specifically, Dr. Burton noted that plaintiff made an appointment to have him fill out forms to "be excused from classes intended to help." Tr. 1156. Dr. Burton's April 9, 2012 examination findings do not support his opinions. For example, Dr. Burton noted clear lungs bilaterally, regular heart beat, and normal range of motion in her hips. Tr. 1156. He also observed clicking in the knees with passive range of motion. Tr. 1156. Because Dr. Burton did not provide an explanation for his extreme limitations, I find that the ALJ's appropriately discredited Dr. Burton's opinion, especially given that his own clinical findings do not even support his opinions.

Second, the ALJ properly found that Dr. Burton's second opinion, in the form of a physical RFC assessment, was inconsistent with the objective medical record. Tr. 22, 1149-50. As previously discussed, plaintiff's x-rays show minimal findings. For example, a May 2009 bilateral hip x-ray revealed no evidence of hip

arthritis or abnormality. Tr. 761. Plaintiff's multiple chest x-rays were normal throughout the period at issue. Tr. 606, 618, 630, 767. A May 2009 x-ray of plaintiff's lumbar spine revealed multilevel degenerative changes throughout the lumbar spine. Tr. 763. Another lumbar x-ray in July 2010 showed moderate degenerative changes throughout her spine. Tr. 940. As discussed above, after her May 2007 left knee surgery, plaintiff's examinations with respect to her knees are essentially normal. Tr. 465, 494, 534, 939.

Here, the medical record does not substantiate the severity of limitations assessed by Dr. Burton. For example, in July 2010, Dr. Lewis noted an essentially normal examination. Tr. 936-39. As previously discussed, the record contains some examination findings supporting mild limitations but do not provide support for Dr. Burton's extreme limitations. *See generally* Tr. 479, 494, 498, 505, 514, 535, 554, 664, 676, 779. With respect to plaintiff's right shoulder pain, the ALJ evaluated and discussed medical evidence of this impairment and properly assessed a limitation of only occasional overhead reaching with her right upper extremity. Tr. 19-20. Although plaintiff insists on a different interpretation of the medical evidence, I conclude that the ALJ made logical inferences from the record to support his conclusions. Because the ALJ's interpretation is rational and is supported by substantial evidence in the record as a whole, it will not be disturbed. *See*

19 - OPINION AND ORDER

*e.g., Molina*, 674 F.3d at 1111, (ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record).

Plaintiff further argues that the ALJ erred in giving less weight to the opinion of a treating physician than to the opinion of a nonexamining physician. This argument is without merit.

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion or either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). In this case, the ALJ relied on the opinions of nonexamining physicians, the opinion of an examining physician, and objective medical evidence in the record to determine that plaintiff is capable of a reduced level of light work. Tr. 21-22. In fact, nonexamining physician Martin B. Lahr, M.D. cited to the examination findings of Dr. Lewis as findings of fact supporting his assessment of a reduced light RFC. Tr. 86, 88-91. Nonexamining physician Neal Berner, M.D., affirmed Dr. Lahr's RFC assessment. Tr. 102. Moreover, the objective medical evidence, as discussed in depth above, supports the opinions of Drs. Lahr and Berner.

The ALJ also relied on the findings and opinion of examining physician Douglas A. Smyth, Ph.D. In a June 2012 examination, Dr. Smyth noted intact cognition, short and long term memory, and average attention. Tr. 1176. Dr. Smyth also noted a mixed ability to perform calculations, clear speech, and no evidence of

hallucationations, delusions, or compulsions. Tr. 1177. Dr. Smyth diagnosed major depressive disorder recurrent moderate but opined that her symptoms appear moderately well controlled with medication. Tr. 1177-78. Specifically, Dr. Smyth opined only that plaintiff has a mild limitation in her ability to respond appropriately to usual work situations and changes in a routine work setting. Tr. 1182. The ALJ incorporated this opinion in his RFC finding. Tr. 19, 21.

Finally, as discussed above, the ALJ discussed and cited to the objective medical record as well as Dr. Lewis's examination findings in discrediting Dr. Burton's opinions and assessing a reduced light RFC finding. Tr. 19-21. In summary, I conclude that the ALJ did not err in evaluating Dr. Burton's opinions and provided specific and legitimate reasons backed by substantial evidence in the record as a whole.

### III. **The ALJ Did Not Err in Evaluating Ms. Clark-Harmon's opinion**

Lay witness testimony as to how a claimant's symptoms affect her ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout*, 454 F.3d at 1053; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

Plaintiff argues that the ALJ erred his evaluation of Ms. Clark-Harmon's opinion. In an April 21, 2012 letter, Ms. Clark-Harmon opined that plaintiff's chronic pain prevents her from being very physically active. Tr. 1170. Ms. Clark-Harmon also opined that plaintiff's depression results in poor concentration and decreased ability to tolerate stress. *Id.*

In assessing opinion evidence, the ALJ considered and gave "some weight" to the Ms. Clark-Harmon's opinion. Specifically, the ALJ cited to the fact that Ms. Clark-Harmon's opinion was inconsistent with her own examination findings and that her opinion appeared largely based on plaintiff's subjective complaints. Tr. 22.

Contrary to plaintiff's assertion, the ALJ properly evaluated Ms. Clark-Harmon's opinion and provided a germane reason for according it "some weight." The ALJ found that Ms. Clark-Harmon's treatment records do not support her opinion. For example, in a January 2010 examination, Ms. Clark-Harmon noted that plaintiff denied feeling any anxiety, depression or suicidal ideation, and her mood was "very stable on Cymbalta." Tr. 855. In June 2009, Ms. Clark-Harmon noted a normal mood and affect and normal attention and concentration. Tr. 883. In a December 2011, Ms. Clark-Harmon noted that plaintiff scored a 27 out of 30 on a mental status examination and presented with a normal mood and affect and normal attention and concentration. Tr. 987. In fact, Ms. Clark-Harmon's

mental health treatment notes indicate relatively normal findings. *See generally*, Tr. 485, 494, 509, 535, 869, 894, 1164.

In terms of plaintiff's physical limitations, Ms. Clark-Harmon's treatment notes also do not reveal significant clinical abnormalities consistent with her opinion. For example, in a June 2008 examination, Ms. Clark-Harmon observed pain to palpation in plaintiff's right shoulder with a marked decrease in range of motion but intact sensation and circulation. Tr. 505. By September 2008, Ms. Clark-Harmon noted 5/5 muscle strength throughout plaintiff's body, an absence of joint swelling or muscular atrophy, a lack of edema, and no focal deficits. Tr. 494. In a June 2009 examination, Ms. Clark-Harmon noted a steady gait and a congested cough with relaxed respirations. Tr. 883. In an April 2009 examination, Ms. Clark-Harmon noted a steady gait, mild tenderness across plaintiff's lower back, tenderness in the hips bilaterally and good range of motion, sensation and circulation. Tr. 894. To the extent that Ms. Clark-Harmon's physical findings support some limitations, the ALJ's finding of a reduced level of light work, including only occasional reaching overhead with the right shoulder and avoiding respiratory irritants, adequately addresses these limitations. *See generally*, Tr. 479, 509, 514, 534, 990, 997. Thus, I find that the ALJ's rationale that Ms. Clark-Harmon's opinion was inconsistent with her treatment notes is a germane reason to discredit her opinion.

23 - OPINION AND ORDER

While the ALJ is only required to provide one germane reason for discrediting lay testimony, here, the ALJ also discredited Ms. Clark-Harmon's opinion because it appears largely based on plaintiff's subjective allegations. It is well-settled that a physician's opinion premised upon a claimant's properly discounted subjective symptoms and limitations may be disregarded. *Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Morgan*, 169 F.3d at 602.

As the ALJ noted, Ms. Clark-Harmon's opinion letter indicates that plaintiff's chronic pain limits her ability to be physically active. Tr. 1170. As discussed above, the ALJ properly considered and discredited the severity of plaintiff's pain allegations to the extent they conflict with the RFC finding. Tr. 22, 23. To be sure, Ms. Clark-Harmon did not provide clinical findings to support her opinion that plaintiff's pain prevents her from engaging in physical activity. In light of plaintiff's negative credibility determination, the ALJ properly discredited Ms. Clark-Harmon's opinion to the extent that it relies on plaintiff's pain complaints.

Finally, while I acknowledge plaintiff's argument that the ALJ appears to question Ms. Clark-Harmon's motives without actual evidence in the record to support such an allegation, I find that this is a harmless error. In the decision, the ALJ appears to give

less weight to Ms. Clark-Harmon's opinion because she might have sympathized with plaintiff or felt pressured to provide an opinion assessing limitations consistent with a finding of disability. Tr. 22. Plaintiff is correct in noting that the record does not support the ALJ's assertions regarding Ms. Clark-Harmon's motivations in providing an opinion. Nevertheless, because the ALJ provided two other germane reasons to discredit Ms. Clark-Harmon's opinion, this error is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless.").

Accordingly, as discussed above, the ALJ provided two germane reasons, supported by substantial evidence for rejecting the opinion of Ms. Clark-Harmon. *Bayliss*, 427 F.3d at 1218.

IV.  **The ALJ Did Not Err in Assessing the RFC**

Plaintiff argues that the ALJ failed to incorporate his finding of a moderate limitation in concentration, persistence, or pace in his RFC finding. Plaintiff further argues that the ALJ failed to find a limitation to simple, routine work. I disagree.

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see Bayliss*, 427 F.3d at 1217, (the ALJ is only required to identify specific, credible limitations in the RFC;

25 – OPINION AND ORDER

"[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

Plaintiff misinterprets the ALJ's "paragraph B" findings. At step three, the ALJ found the following "paragraph B" criteria to assess whether plaintiff met any 12.00 mental impairment listing: mild limitation in activities of daily living and maintaining social functioning and a moderate limitation in maintaining concentration, persistence, and pace. Tr. 16-18.

As the ALJ correctly noted, the "paragraph B" criteria "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps two and three of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." Tr. 18; Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *4 (July 2, 1996).

In this case, the record does not support a limitation to simple, routine work. See *Stubbs-Danielson,* 539 F.3d at 1174, ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). As discussed above, the medical record does not provide evidence of significant mental limitations. For example, Rob Nebeker, M.D., noted in a January 2012 that plaintiff

has a linear thought process and presented with a bright affect
with mild constriction. Tr. 949. In October 2012, Dr. Nebeker noted
a linear thought process with a pleasant and cooperative
appearance. Tr. 1185. Dr. Nebeker noted that plaintiff requested
that no changes to her medication be made. Id. Moreover, plaintiff
failed to attend psychotherapy sessions for six months. Tr. 1198.
The ALJ appears to adopt Dr. Smyth's opinion that plaintiff has a
mild limitation in her ability to respond appropriately to usual
work situations and changes in a routine work setting, which is
supported by substantial evidence. Tr. 19, 1182. To be sure, no
physician assessed a limitation to simple, routine work. Thus, the
ALJ was not required to adopt his finding of a moderate limitation
in concentration, persistence, and pace at step three into the RFC
finding to the extent that the record is inconsistent with such a
finding.

Even assuming *arguendo* that plaintiff is limited to simple,
routine work as plaintiff asserts, the ALJ's error is harmless. The
ALJ identified two jobs at step five consistent with a limitation
to simple, routine work that plaintiff is able to perform. At step
five, the ALJ found that given the limitations in the RFC finding,
plaintiff is able to perform other work: photocopy machine
operator, Dictionary of Occupational Titles (DOT) § 207.685-014;
office helper, DOT § 239.567-010; ticket seller, DOT § 211.467-030.
*Dictionary of Occupational Titles* (DOT), 1991 WL 645958; Tr. 25.

27 - OPINION AND ORDER

All three jobs require a skill vocational preparation (SVP) level of two. However, the photocopy machine operator and office helper jobs require a level two reasoning while the ticket seller job requires a level three reasoning.[3]

The Ninth Circuit has recently held that a limitation to simple routine work or simple repetitive tasks is consistent with jobs with a level two reasoning rather than level three reasoning. *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *see also Rounds v. Commissioner of Soc. Sec. Admin.,* No. 13-35505, 2015 WL 4620150, *5 note 6 (9th Cir. Aug. 4, 2015) ("Unpublished decisions of panels of this Court and opinions from some of our sister circuits have concluded that an RFC limitation to "simple" or "repetitive" tasks is consistent with Level Two reasoning.").

With a limitation to simple routine tasks, plaintiff could still perform the photocopy machine operator job and office helper job because both jobs require level two reasoning.[4] Thus, even

---

[3] The DOT describes the requirements including reasoning ability required to perform the job from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most). *See* DOT, App. C, 1991 WL 688702 (4th ed. 1991); *see also Zavalin*, 778 F.3d at 846.

[4] The ALJ found both jobs exist in significant numbers in the national economy. Specifically, the ALJ found that the photocopy machine operator job has 55,000 jobs nationally and 800 jobs in Oregon and the office helper job has 165,000 jobs nationally and 1,800 jobs in Oregon. Tr. 25. *Compare Beltran v. Astrue*, 700 F.3d 386, 389-390 (9th Cir. 2012) (holding that 135 jobs regionally and 1,680 jobs nationally did not constitute a significant number of jobs that plaintiff could perform) *with Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (holding that 2,300 jobs in San

adopting plaintiff's argument, the ALJ's error is harmless. *See Stout,* 454 F.3d at 1055 (9th Cir.2006) (an ALJ's error is harmless if it is inconsequential to the ultimate nondisability determination).

Likewise, plaintiff challenges the ALJ's hypothetical to the VE solely on the basis that the ALJ failed to incorporate his finding of a moderate limitation in maintaining concentration, persistence, and pace in the hypothetical posed to the VE. As previously discussed, even if the RFC included a limitation to simple, routine work, the ALJ identified two jobs that plaintiff could perform. Thus, plaintiff's argument lacks merit.

Aside from the alleged error regarding a limitation to simple, routine work, I have not identified any error committed by the ALJ and therefore, the hypothetical posed to the VE contained all the limitations deemed credible by the ALJ and supported by substantial evidence in the record. Accordingly, the ALJ could rely upon the VE testimony. *Valentine,* 574 F.3d at 694; *Stubbs-Danielson,* 539 F.3d at 1175-76.

---

Diego County and 64,000 jobs nationally constitute a significant number of jobs that plaintiff could perform) *and Mitchell v. Colvin,* No. 13-35059, 2014 WL 3866458, at *2 (9th Cir. Aug. 7, 2014) (finding that 1,300 jobs regionally and 41,000 nationally constitutes a significant number of jobs).

**V.    The ALJ Did Not Commit Reversible Error in Assessing Lay Testimony**

The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694. In an April 12, 2012 letter, Debra Weygandt, plaintiff's friend, provided a letter describing plaintiff's symptoms. Tr. 270. Ms. Weygandt noted that plaintiff can barely move most days due to her pain. *Id.* Ms. Weygandt indicated that plaintiff can perform chores slowly with significant breaks to rest in between each chore. *Id.* Ms. Weygandt also noted that plaintiff cannot play with her son because of her pain. Tr. 271.

In the instant action, plaintiff argues that the ALJ committed a reversible error because he failed to discuss and credit the lay witness testimony of Ms. Weygandt. I disagree.

Ms. Weygandt's testimony adds no new allegations on behalf of plaintiff. Failure to comment on lay testimony is harmless "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674, F.3d at 1117. Ms. Weygandt's testimony is similar to that of plaintiff, including allegations of pain, a need to lay down for significant portions of the day, and difficulty walking and standing. As discussed above, the ALJ gave three convincing reasons, supported by substantial evidence to

30 - OPINION AND ORDER

discount plaintiff's testimony. Specifically, the ALJ found that plaintiff's allegations are inconsistent with the medical record, and this reason is equally applicable to Ms. Weygandt's testimony. Thus, the ALJ's error in failing to discuss Ms. Weygandt's testimony is harmless. *See Burch*, 400 F.3d at 679, ("A decision of the ALJ will not be reversed for errors that are harmless.").

### CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this *10* day of SEPTEMBER, 2015.

Malcolm F. Marsh
United States District Judge

31 - OPINION AND ORDER